**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **YOSELIN MICHELLE AGUILAR** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil Case No.: SAG-25-03381** |
| **v.** | * | |
| | * | |
| **DREYFRUSS MANAGEMENT LLC** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Yoselin Michelle Aguilar ("Plaintiff") filed this action in the Circuit Court for Prince George's County, Maryland, on behalf of herself and all others similarly situated, against Defendant Dreyfuss Management LLC ("Dreyfuss"), which manages the apartment complex where she resides. ECF 2. Dreyfuss then removed the case to this Court, citing both diversity jurisdiction and Class Action Fairness Act ("CAFA") jurisdiction. ECF 1. Plaintiff has now filed a motion to remand the case to state court. ECF 7. Dreyfuss opposed the motion, ECF 8, and Plaintiff filed a reply, ECF 11. Dreyfuss then filed a motion for leave to file a sur-reply, ECF 14. Dreyfuss has also filed a motion to dismiss the complaint. ECF 10. Rather than file an opposition to the motion to dismiss, Plaintiff filed a separate motion to stay all other proceedings pending disposition of her motion to remand. ECF 16. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the motion for leave to file a sur-reply and the motion to remand will be granted. The motion to stay will be denied as moot, and this Court will not address the motion to dismiss, which should be adjudicated in state court.

## I.   BACKGROUND

Plaintiff's complaint alleges that Dreyfuss (1) collected from or attempted to collect from its residential tenants, such as herself, while lacking the consumer collection agency license required under state law and (2) failed to comply with state and local laws regarding residential leases. ECF 2 at 1. The complaint defines the class that Plaintiff seeks to represent as "[a]ll individuals that are or were a residential tenant with an address in the State in Maryland that Dreyfuss Management sought to collect from in the three years preceding the filing of the Complaint in this action until a class is certified." *Id.* ¶ 92.

## II.   LEGAL STANDARD

Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Other cases are reserved to the state courts. When a case is removed to federal court, courts "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Receivership Est. of Mann Bracken, LLP v. Cline*, Civ. No. RWT-12-0292, 2012 WL 2921355, at *2 (D. Md. July 16, 2012) (internal quotation marks omitted) (quoting *Stephens v. Kaiser Found. Health Plan of the Mid–Atl. States, Inc.*, 807 F. Supp. 2d 375, 378 (D. Md. 2011)). As the Fourth Circuit has explained, "The burden of establishing federal jurisdiction is placed upon the party seeking removal. Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (internal citations omitted). Nevertheless, because the decision to remand is largely unreviewable, district courts should be cautious about denying a defendant access to a federal forum. *See Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 988 F. Supp. 913, 914–15 (D. Md. 1997).

### III.  DISCUSSION

#### A.  Diversity Jurisdiction

Pursuant to 28 U.S.C. § 1332(a), federal courts have diversity jurisdiction over cases between citizens of different states when the amount in controversy exceeds $75,000. *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). Defendants seeking removal may not aggregate multiple plaintiffs' damages to meet the greater than $75,000 threshold. *McFeely v. Wells Fargo Bank, NA*, 568 F. Supp. 3d 553, 557 (D. Md. 2021). When a complaint does not allege a specific amount in damages, a defendant seeking removal must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Momin v. Maggiemoo's Int'l, L.LC.*, 205 F. Supp. 2d 506, 509–10 (D. Md. 2002).

The plain language of the complaint shows that Plaintiff seeks damages in excess of $75,000 on behalf of the putative class. *See, e.g.*, ECF 2 ¶ 132(a) (requesting that the court grant "a money judgment and order the Defendant to disgorge and pay to the Plaintiff Class Members all amounts collected by Dreyfuss; a sum more than $75,000 and any amounts that Dreyfuss profited or benefitted from by using the money of Class Members"); *id.* ¶ 146(b) (requesting that the court grant "a money judgment in favor of the Plaintiff, Class Members and Subclass B members in an amount in excess of $75,000 as determined by a jury"); *id.* ¶ 166(b) (requesting that the court grant "a money judgment in favor of the Plaintiff, Class and Subclass Members in an amount more than $75,000 as determined by a jury"). Nowhere in the complaint does Plaintiff specify any amount of damages that she seeks on behalf of only herself. Because the complaint itself does not seek over $75,000 on behalf of Plaintiff alone and alleges no specific amount of individual damages, Dreyfuss must show, by a preponderance of the evidence, that her damages will exceed that threshold.

Dreyfuss first argues that Plaintiff has effectively sought over $75,000 on behalf of herself alone because of Maryland's state pleading requirements. Dreyfuss notes that Maryland Rule 2-305 requires a complaint seeking a money judgment to include a demand for either (1) a specific amount less than $75,000 or (2) an unspecified amount over $75,000. Dreyfuss further emphasizes the committee note to this rule, which states, "[i]f the amount sought exceeds $75,000, a general statement to that effect is necessary in order to determine if the case may be removed to a federal court based on diversity of citizenship." Md. R. 2-305 Comm. Note. Dreyfuss appears to argue that because Plaintiff chose to include a demand for an unspecified amount over $75,000, the committee note mandates that the case be removable. This Court fails to understand, however, how a committee note to a state rule could dictate the application of a federal statute. Regardless of what this Maryland rule might have required of Plaintiff as a matter of state law, it has no effect on the question before this Court: whether, as a matter of federal law, the amount in controversy as to Plaintiff exceeds $75,000.

Dreyfuss next argues that this Court should consider attorneys' fees in determining the amount in controversy. Dreyfuss failed, however, to state this additional basis for removal in its notice of removal. The notice of removal states:

> The amount in controversy exceeds [$75,000] based on the demands that Dreyfuss Management LLC (1) disgorge "all amounts collected from Plaintiff Class Members" within the last three years and "all income, profits or other advantages it obtained through the use of the funds collected from Named Plaintiff Class," Ex. 1 at 20, 22; and (2) pay a money judgment in favor of Plaintiff and the "hundreds if not thousands" of putative class members and subclass members."

ECF 1 ¶¶ 12, 14. Thus, Dreyfuss's notice of removal expressly relied only on the requested disgorgement and money judgments to support its amount in controversy calculation. Dreyfuss asks that this Court consider the argument regarding attorneys' fees in its opposition to the motion

to remand as an amendment to its notice of removal, or alternatively, grant it leave to formally amend its notice of removal.

The Fourth Circuit has determined that "after thirty days, district courts have discretion to permit amendments that correct allegations already present in the notice of removal. Courts have no discretion to permit amendments furnishing new allegations of a jurisdictional basis." *Wood v. Crane Co.*, 764 F.3d 316, 323 (4th Cir. 2014). "The trick lies in placing a case within one of those two categories." *Id.* The court clarified that district courts may not permit amendment to add allegations omitted from the original notice based on "a strategic choice," rather than "mere inadvertence" or "a clerical error." *Id.* at 324.

Another court in this district has concluded that the type of amendment that Dreyfuss seeks to make here, adding a new type of damages to reach the amount in controversy threshold, falls into the second, impermissible category. *See McFeely*, 568 F. Supp. 3d at 558. In *McFeely*, the defendants' notice of removal expressly relied on "damages for the alleged statutory violations plus reasonable attorneys' fees," to meet the jurisdictional minimum. *Id.* In their opposition to a motion to remand, however, they raised for the first time the theory that the object of the requested declaratory relief exceeded $75,000. *Id.* Citing *Wood*, the court concluded that the defendants could not amend their notice to add this new theory because they had made "the choice" to omit it from their original notice. *Id.*; *see also Ndzerre v. Liberty Power Corp.*, 318 F. Supp. 3d 761, 765–66 (D. Md. 2018) (rejecting argument that court should consider attorneys' fees when defendant did not mention attorneys' fees as part of amount in controversy calculation in notice of removal).

This Court reaches the same conclusion regarding the similar request to amend here. Dreyfuss expressly relied on the requests for money judgments and disgorgement in its notice, but it now seeks to rely on the new theory that the complaint's request for attorneys' fees will exceed

$75,000. Under each of her claims, in the same section containing the requests for money judgments and disgorgement, Plaintiff's complaint includes requests for "reasonable attorney's fees." ECF 2 ¶¶ 122(d),125(d), 132(e), 146(e), 166(e), 173(e). The complaint even included a separate notice of her claim for attorneys' fees. *Id.* ¶ 174. The conspicuous nature of the request for attorneys' fees leads this Court to conclude that Dreyfuss made "a strategic choice" to omit such fees from its amount in controversy calculation and instead rely on other theories of damages. Thus, Dreyfuss may not amend its notice of removal to incorporate attorneys' fees into its amount in controversy calculation.

Finally, Dreyfuss argues that this Court should consider emotional distress damages in the amount in controversy calculation. Setting aside the fact that the complaint contains no request for emotional distress damages, the notice of removal similarly contains no reference to such damages. For the same reason that Dreyfuss may not amend its notice of removal to incorporate attorneys' fees, it may not do so to incorporate emotional distress damages.

Because Dreyfuss has failed to show that the amount in controversy as to Plaintiff exceeds $75,000, it has failed to establish diversity jurisdiction.

## B. CAFA Jurisdiction

Federal courts have jurisdiction over class actions in which any member of the class is a citizen of a state different from any defendant and the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2). Plaintiff does not dispute that Dreyfuss has satisfied these requirements; rather, she contends that an exception to CAFA jurisdiction applies. Specifically, she argues that the "local controversy exception" under § 1332(d)(4)(A) and the "home state exception" under § 1332(d)(4)(B) apply, or alternatively, that this Court should remand this case in its discretion under § 1332(d)(3). The applicability of these exceptions does not defeat federal jurisdiction but

rather permits or requires federal court abstention. *Skyline Tower Painting, Inc. v. Goldberg*, 148 F.4th 209, 222 (4th Cir. 2025). The party seeking remand bears the burden of showing that an exception to CAFA jurisdiction applies by a preponderance of the evidence. *Id.* at 221.

### 1. Mandatory Remand Under § 1332(d)(4)

Under both the local controversy exception and home state exception, a district court must decline CAFA jurisdiction if the plaintiff satisfies several requirements. *See* § 1332(d)(4)(A), (B). It appears that the only element in dispute is one required by both provisions, namely, that at least two-thirds[1] of the members of the putative class are citizens of the state in which the action was originally filed. *Id.*

Dreyfuss argues that Plaintiff has failed to show that at least two-thirds of the putative class members are citizens of Maryland. Showing citizenship for this purpose "should not be exceptionally difficult, but instead practical and reasonable," in light of the unworkability of determining the domicile of every proposed class member at the remand stage. *Skyline*, 148 F.4th at 226 (quoting *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 392 (6th Cir. 2016)). Furthermore, residency creates a rebuttable presumption of citizenship in this context. *Id.* at 225. Evidence that a significant percentage of a putative class members can be expected to be only temporary residents, such as if many are residents of a military base or university campus, may rebut the presumption. *Id.* at 227. Citizenship of putative class members is determined based on the date of the filing of the complaint. § 1332(d)(7).

---

[1] As Dreyfuss notes, subsection (d)(4)(A) describes this requirement as "greater than two-thirds," whereas subsection (d)(4)(B) describes it as "two-thirds or more." Because Dreyfuss used "at least two-thirds" to describe the requirement under both subsections, and the distinction does not alter the analysis in this case, this Court will also refer to the requirement under both subsections as "at least two-thirds."

The proposed class consists of individuals who were residential tenants of Dreyfuss in Maryland during the three years preceding the filing of the complaint. Thus, by definition, the class consists of individuals who resided in Maryland at some point between September 4, 2022 and September 4, 2025. To show that these exceptions apply, Plaintiff must show that it is more likely than not that at least two-thirds of those individuals remained Maryland residents on September 4, 2025, unless Dreyfuss offers evidence rebutting the presumption that residency equates to citizenship in this context.

In support of her showing that these exceptions apply, Plaintiff has presented a declaration from her counsel that includes data from United States Census Bureau reports regarding annual changes in Maryland's population. *See* ECF 7-2. Specifically, the data shows Maryland's population in 2021, 2022, and 2023; the number of those residents who lived at the same residence one year ago; and the number of those residents who lived in Maryland but at a different residence one year ago. *Id.* The declaration also creates a new column of data, labeled "Left State," that does not appear in the official Census tables. *Id.* Rather, the declaration explains that Plaintiff's counsel reached the numbers that appear in that column by subtracting from each year's population the respective number of residents who lived in the same residence one year ago and the number who lived in Maryland but at a different residence one year ago. *Id.*

This Court agrees with Dreyfuss that those calculations reflect the number of individuals who moved *into* Maryland in each year, rather than those who moved *out of* Maryland, or "Left [the] State," in each year. This Court further agrees with Dreyfuss that the table presented by Plaintiff does not differentiate between homeowners and renters, who tend to be more mobile than homeowners. In making this argument, Dreyfuss notes that the Census Bureau publishes another set of tables, Table B07413, that does show the number of individuals who moved out of Maryland

8

each year and does differentiate between homeowners and renters. Specifically, Table B07413 shows, as pertinent here, Maryland's population one year ago and the number of those residents who moved to a different state. It also includes sub-values based on renter/homeowner status.

This Court will take judicial notice of Table B07413, an official government report, for the years 2022, 2023, and 2024 (the table for 2025 is not yet available). *See United States v. Cecil*, 836 F.2d 1431, 1452 (4th Cir. 1988) ("[C]ourts may take judicial notice of official governmental reports and statistics."). Although this circumstance is somewhat unusual in that the party opposing remand has presented evidence in support of it, this Court perceives no unfairness to Dreyfuss in relying on official government statistics that Dreyfuss itself raised.

The table below reproduces the pertinent information from Table B07413 in 2022:

|  | Maryland | |
|---|---|---|
| Label | Estimate | Margin of Error |
| Total living in area 1 year ago: | 5,973,158 | ±16,378 |
| Householder lived in owner-occupied housing units | 4,269,193 | ±36,293 |
| Householder lived in renter-occupied housing units | 1,703,965 | ±38,061 |
| Moved to different state: | 178,769 | ±9,952 |
| Householder lived in owner-occupied housing units | 86,659 | ±8,168 |
| Householder lived in renter-occupied housing units | 92,110 | ±6,134 |

U.S. Census Bureau, American Community Survey, Table B07413: 2022, "Geographical Mobility in the Past Year by Tenure for Residence 1 Year Ago in the United States," available at https://data.census.gov/table/ACSDT1Y2022.B07413?q=Table+B07413 (last accessed: May 1, 2026).

The table below reproduces the pertinent information from Table B07413 in 2023:

|  | Maryland | |
| --- | --- | --- |
| Label | Estimate | Margin of Error |
| Total living in area 1 year ago: | 5,963,190 | ±17,528 |
| Householder lived in owner-occupied housing units | 4,269,934 | ±33,733 |
| Householder lived in renter-occupied housing units | 1,693,256 | ±34,429 |
| Moved to different state: | 174,551 | ±11,092 |
| Householder lived in owner-occupied housing units | 76,313 | ±7,803 |
| Householder lived in renter-occupied housing units | 98,238 | ±8,977 |

U.S. Census Bureau, American Community Survey, Table B07413: 2023, "Geographical Mobility in the Past Year by Tenure for Residence 1 Year Ago in the United States," available at https://data.census.gov/table/ACSDT1Y2023.B07413?q=Table+B07413 (last accessed: May 1, 2026).

The table below reproduces the pertinent information from Table B07413 in 2024:

|  | Maryland | |
| --- | --- | --- |
| Label | Estimate | Margin of Error |
| Total living in area 1 year ago: | 5,998,417 | ±15,290 |
| Householder lived in owner-occupied housing units | 4,322,595 | ±41,432 |
| Householder lived in renter-occupied housing units | 1,675,822 | ±39,341 |
| Moved to different state: | 133,387 | ±9,030 |
| Householder lived in owner-occupied housing units | 55,368 | ±5,805 |
| Householder lived in renter-occupied housing units | 78,019 | ±7,566 |

10

U.S. Census Bureau, American Community Survey, Table B07413: 2024, "Geographical Mobility in the Past Year by Tenure for Residence 1 Year Ago in the United States," available at https://data.census.gov/table/ACSDT1Y2024.B07413?q=Table+B07413 (last accessed: May 1, 2026).

By dividing the "Householder lived in renter-occupied housing units" under "Moved to different state" value by the "Householder lived in renter-occupied housing units" under "Total living in area 1 year ago" value, this Court has calculated that approximately 5.4% of renters left in 2022, 5.8% of renters left in 2023, and 4.7% of renters left in 2024. Applying the margin of error in favor of Dreyfuss (by adding it to the number of renters who moved to a different state and subtracting it from the number of renters residing in the state one year before) yields only slightly higher results: 5.9% in 2022, 6.5% in 2023, and 5.2% in 2024.

Although this data reflects renters generally, rather than Dreyfuss renters specifically, this Court perceives no reason that Dreyfuss renters would be any more likely to leave the state than a renter of any other management company. Furthermore, although no data for 2025 exists yet, the data from 2022–2024 shows that the percentage of Maryland renters who leave the state each year is currently fairly stable. This Court further notes that Dreyfuss has offered no argument or evidence to rebut the presumption of citizenship based on residence in this context. Thus, even assuming that Dreyfuss gained no new Maryland tenants to replace those who left the state during the class period, if approximately 6% of its tenants left the state during each of the three years of the class period, then approximately 82% of its tenants during the class period likely remained Maryland residents at the time that Plaintiff filed her complaint. Based on this evidence, Plaintiff has arguably met her burden of showing that it is more likely than not that at least two-thirds of the putative class members were Maryland citizens at the time of the filing of the complaint. This

11

Court will assume without deciding that Plaintiff has not met her burden for a mandatory remand under § 1332(d)(4), however, because it is clear that this case warrants a discretionary remand under § 1332(d)(3).

### 2. Discretionary Remand Under § 1332(d)(3)

Under § 1332(d)(3), a district court may, "in the interests of justice and looking at the totality of the circumstances," decline to exercise jurisdiction over a class action in which greater than one-third but less than two-thirds of the members of the putative class and the primary defendants are citizens of the state in which the action was originally filed.

Based on the data described above, it is clear that Plaintiff has met her burden to show that it is more likely than not that at least one-third, even if assuming not two-thirds, of the putative class members were Maryland citizens at the time of the filing of the complaint. Indeed, the facts here closely resemble those in a case that the Fourth Circuit favorably cited when discussing the citizenship showing required under the CAFA exceptions. *See Skyline*, 148 F.4th at 227 (citing *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1223 (9th Cir. 2020)). In that case, the plaintiff showed that more than 90% of the putative class members had last known mailing addresses in the forum state, California. *Adams*, 958 F.3d at 1222–23. The court noted that "last known mailing addresses are not a direct proxy for residence, and residence is not a direct proxy for citizenship," but concluded that "given the substantial cushion afforded by the percentage of class members with last known California addresses, as compared to the percentage of class member citizens required for a discretionary remand, [the plaintiff] readily met her burden." *Id.*

In this case, the class definition itself effectively provides the equivalent of a last known mailing address in the forum state for 100% of the putative class members. And even though last known mailing address is not a direct proxy for residence, particularly in light of the fact that the

last known mailing address for some putative class members is over three years old at this point, this Court has taken judicial notice of evidence that, on average, only approximately 6% of Maryland renters leave the state each year. Like in *Adams*, given the "substantial cushion" between the approximately 82% of putative class members who likely remained Maryland residents when the complaint was filed and the 33% of putative class members necessary for a discretionary remand, Plaintiff has met her burden.

Furthermore, it appears undisputed that the requirement that the primary defendant be a citizen of the forum state is satisfied. For purposes of federal jurisdiction under CAFA, a limited liability company is a citizen of the state under whose laws it is organized and the state where it has its principal place of business. *Ferrell v. Express Check Advance of SC, LLC*, 591 F.3d 698, 699–700 (4th Cir. 2010). Plaintiff alleged that Dreyfuss, the only defendant in this action, is a Maryland corporation, *see* ECF 2 ¶ 41, and, although Dreyfuss has countered that it is a limited liability company, *see* ECF 1 ¶ 11 n.3, it has not disputed that it has its principal place of business in Maryland. Dreyfuss is therefore a citizen of Maryland, the state in which the action was originally filed, for CAFA purposes.

Plaintiff must still show that, "in the interests of justice and looking at the totality of the circumstances," this case warrants a discretionary remand. Section 1332(d)(3) directs a court to consider several factors in exercising its discretion: (1) "whether the claims asserted involve matters of national or interstate interest;" (2) "whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;" (3) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;" (4) "whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;" (5) "whether the number of citizens of the State in which the action was

originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States;" and (6) "whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed."

In this Court's view, the enumerated factors weigh heavily toward remand. This state residential lease and licensing dispute does not involve matters of national or interstate interest; all claims will be governed by Maryland law; Maryland has a distinct nexus to this dispute given it arose out of agreements between Maryland residents and a limited liability company operating in Maryland to lease residential property in Maryland; there is no indication that those putative class members who have since left Maryland have disproportionately become citizens of any other one state; and it appears that no similar class actions have been filed in the three years preceding the filing of this action. For all of these reasons, this case is closely linked to Maryland, and this Court concludes that, "in the interests of justice," remand is appropriate. Accordingly, this Court will remand this case to Maryland state court.

## IV.  CONCLUSION

For the reasons stated above, Plaintiff's motion to remand, ECF 7, will be granted, and this case will be remanded to the Circuit Court for Prince George's County, Maryland for further adjudication. A separate Order follows.


Dated: May 4, 2026                                         _____/s/_____
                                                          Stephanie A. Gallagher
                                                          United States District Judge

14